LOURIE, Circuit Judge, with whom MOORE, Circuit Judge, joins,
concurring in the denial of the petition for rehearing en banc.
I concur in the court’s denial of rehearing en banc in this case, based on the precedent of Mayo Collaborative Services v. Prometheus Laboratories, Inc., 566 U.S. -, 132 S.Ct. 1289, 182 L.Ed.2d 321 (2012). I do so because I find no principled basis to distinguish this case from Mayo, by which we are bound. I write separately to express some thoughts concerning laws of nature and abstract ideas, which seem to be at the heart of patent-eligibility issues in the medical sciences.
Since the Supreme Court’s decision in Bilski v. Kappos, 561 U.S. 593, 130 S.Ct. 3218, 177 L.Ed.2d 792 (2010), the issue of patent eligibility under § 101 has been of key importance in the adjudication of patent cases, particularly in the field of software. The Court’s decisions in Mayo, Association for Molecular Pathology v. Myriad Genetics, Inc., 569 U.S. -, 133 S.Ct. 2107, 186 L.Ed.2d 124 (2013), and Alice Corp. v. CLS Bank International, 573 U.S. -, 134 S.Ct. 2347, 189 L.Ed.2d 296 (2014), have further brought the focus onto the field of medical diagnostics.
The Supreme Court in Mayo determined that the claims in that patent “set forth laws of nature.” It further held in Mayo that steps additional to those setting forth laws of nature in a claimed process must add something “that in terms of patent law’s objectives ha[ve] significance” to the natural laws, such that those steps transform the process into an inventive application of those laws. Mayo, 132 S.Ct. at 1299. Moreover, the Court rejected “post-solution activity that is purely conventional or obvious” as not significant enough to bring a claimed invention within the realm of patent-eligible subject matter. Id. (internal quotation marks and alteration omitted).
Alice relates to the third specific exception to eligibility — abstract ideas — and its discussion also incorporates the requirement of an “inventive concept” beyond “conventional steps.” It held that claims that amount to nothing more than instruction to apply an abstract idea are not patent eligible, although application of the abstract idea may be. In my view, neither of the traditional preclusions of laws of nature or of abstract ideas ought to prohibit patenting of the subject matter in this case.
*1285 Laws of nature are exact statements of physical relationships, deduced from scientific observations of natural phenomena. They are often represented by equations, and include such laws as the relationship between energy and mass (E=me2), the relationship between current and resistance (Ohm’s Law), that between -force, mass, and acceleration (F=ma), Maxwell’s equations, Newton’s laws of motion, and many more. Those laws, all agree, are not and should not be patent-eligible subject matter. But methods that utilize laws of nature do not set forth or claim laws of nature. All physical steps of human ingenuity utilize natural laws or involve natural phenomena. Thus, those steps cannot be patent-ineligible solely on that basis because, under that reasoning, nothing in the physical universe would be patent-eligible.
Abstract steps are, axiomatically, the opposite of tangible steps; that which is not tangible is abstract. But steps that involve machines, which are tangible, steps that involve transformation of tangible subject matter, or tangible implementations of ideas or abstractions should not be considered to be abstract ideas. In Bilski, the Supreme Court supported this proposition when it described our earlier machine- or-transformation test as a useful clue, albeit not the only test, for eligibility.
Conversely, abstract ideas are essentially mental steps; they are not tangible even if they are written down or programmed into a physical machine. Alice, in affirming this court, held that claims that amount to nothing significantly more than instruction to apply an abstract idea are not patent eligible. But the fact that steps are well-known, although relevant to other statutory sections of the patent law, does not necessarily make them abstract.
The claims at issue in Sequenom’s patent are directed to methods for detecting paternally-inherited fetal DNA in maternal blood samples, and performing a- prenatal diagnosis based on such DNA. Following Mayo, which held that certain steps merely recite natural laws and that the remaining steps must be sufficiently innovative apart from the natural laws, the panel in this case held that the claims do not involve patent-eligible subject matter. Appellants and amici have argued before us in briefs that a broad range of claims of this sort appear to be in serious jeopardy. It is said that the whole category of diagnostic claims is at risk. It is also' said that a crisis of patent law and medical innovation may be upon us, and there seems to be some truth in that concern.
The claims in this case perhaps should be in jeopardy, not because they recite natural laws or abstract ideas, but because they may be indefinite or too broad. But they should not be patent-ineligible on the ground that they set forth natural laws or are abstractions.
Claim 1 is directed to a method for detecting a paternally inherited nucleic acid of fetal origin from a pregnant female comprising amplifying a paternally inherited nucleic acid and detecting the presence of a paternally inherited nucleic acid. Claim 21 is directed to a method of performing a prenatal diagnosis comprising providing a maternal blood sample, separating the sample into a cellular and non-cellular fraction, detecting the presence of a nucleic. acid, and providing a diagnosis. Both of these claims contain the nucleus of patent-eligible subject matter.
As the panel noted, the natural phenom-. enon here is the presence of cell-free fetal DNA (“cffDNA”)' in maternal plasma, which, when subjected to certain conventional steps, has led to an important new development: diagnosis of possible birth defects without using highly intrusive means. Applications of natural phenomena or laws to a known process “may well *1286 be deserving of patent protection.” Diehr, 450 U.S. at 187, 101 S.Ct. 1048. And it is not disputed that this scientific work on its own seems like an important discovery and a valuable contribution to the medical field, although no one asserts that a claim directed to the mere existence of cffDNA is patent-eligible. But neither of the representative claims here merely recites a law of nature, a natural phenomenon, or an abstract idea. The claims rely on or operate by, but do not recite, a natural phenomenon or law. The claimed invention involves taking maternal serum, separating it, amplifying the genetic material to detect cffDNA, and running tests to identify certain genes or genetic defects; these are all physical, and not insignificant, steps requiring human intervention.
The claims might be indefinite or too broad in that they do not specify how to amplify and detect, or how to separate, detect, and diagnose. Or they perhaps attempt to claim all known methods of carrying out those steps. But the finer filter of § 112 might be better suited to treating these as questions of patentability, rather than reviewing them under the less-defined eligibility rules.
It is not disputed that fractionating blood, amplifying DNA, and analyzing DNA to detect specific gene sequences are known techniques in the art. As all other steps in the claims are individually well-known, the innovative aspect of the claims appears to be the improvement in the method of determining fetal genetic characteristics or diagnosing abnormalities of fetal DNA, consisting of use of the non-cellular fraction of fetal DNA obtained from a maternal blood sample.
The claim to this invention, then, might have been better drafted as a so-called Jepson claim, which recites what is in the prior art and what is the improvement. Such a claim might read, perhaps with more details added: “In a method of performing a prenatal diagnosis using techniques of fractionation and amplification, the improvement consisting of using the non-cellular fraction of a maternal blood sample.”
Regardless, we are not experts in drafting claims to protect new biological procedures and we are not in a position to rewrite claims or review a hypothetical claim. But against the accusation that such a claim to the invention might be considered mere draftsmanship and thus still ineligible under the seemingly expansive holding of Mayo, it must be said that a process, composition of matter, article of manufacture, and machine are different implementations of ideas, and differentiating among them in claim drafting is a laudable professional skill, not necessarily a devious device for avoiding prohibitions. This is true despite the Supreme Court’s affirmance of this court in Alice, where we had held, by a 7-3 vote, that method and media claims in inventions of the type claimed there were essentially the same.
But focusing on the claims we have rather than those we might have had, the claims here are directed to an actual úse of the natural material of cffDNA. They recite innovative and practical uses for it, particularly for diagnostic testing: blood typing, sex typing, and screening for genetic abnormalities. And it is undisputed that before this invention, the amplification and detection of cffDNA from maternal blood, and use of these methods for prenatal diagnoses, were not routine and conventional. But applying Mayo, we are unfortunately obliged to divorce the additional steps from the asserted natural phenomenon to arrive at a conclusion that they add nothing innovative to the process.
Moreover, the claims here are not abstract. There is nothing abstract about performing actual physical steps on a *1287 physical material. And if the concern is preemption of a natural phenomenon, this is, apparently, a novel process and that is what patents are intended to incentivize and be awarded for. The panel here also noted that there were other uses for cffDNA and other methods of prenatal diagnostic testing using cffDNA -that do not involve the steps recited in the various claims. That fact should sufficiently address the concern of improperly tying up future use of natural phenomena and laws.
In sum, it is unsound to have a rule that takes inventions of this nature out of the realm of patent-eligibility on grounds that they only claim a natural phenomenon plus conventional steps, or that they claim abstract concepts. But I agree that the panel did not err in its conclusion that under Supreme Court precedent it had no option other than to affirm the district court.